# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FARES SHALASH | ) |
| | ) |
| Plaintiff, | ) No. 07 C 298 |
| | ) |
| v. | ) Judge Ruben Castillo |
| | ) |
| MICHAEL B. MUKASEY, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Fares Shalash ("Plaintiff") has been a legal permanent resident of the United States since November 1990. (R. 21, Application for Atty's Fees at 1.) He applied for naturalization on September 9, 2003, and he was interviewed by the United States Citizen and Immigration Services ("CIS") on April 12, 2004. (R. 1, Pet. for Hearing at 3.) He passed the English language, U.S. history, and government tests, but he was informed that he would not be given a decision on his application until a pending fingerprint check was completed. (*Id.*)

By January 17, 2007, CIS had not yet ruled on Plaintiff's naturalization application, and he filed a petition in this Court for a hearing on his application, naming the U.S. Attorney General, U.S. Department of Homeland Security Secretary, U.S. CIS Director, Chicago CIS District Director, and the FBI Director as Defendants. (R. 1, Pet. for Hearing.) Plaintiff mailed a copy of the complaint and waiver of summons forms to Defendants, but Defendants did not sign the waiver forms, were never served with a summons, and no summons was ever issued by this Court. (R. 23, Defs.' Mem. in Supp. of Mot. to Dismiss and Resp. at 2.)

At a status hearing on May 30, 2007, Defendants informed the Court that they had not been properly served with Plaintiff's petition for a hearing and that they had not waived service.

(*Id.*, Ex. 3, 5/30/07 Tr. at 6-8.) Nevertheless, Defendants represented that they would follow the Court's orders in the matter. (*Id.*) At the conclusion of the hearing, the Court remanded the case to CIS, ordering that it render a final decision on Plaintiff's pending citizenship application on or before September 28, 2007. (R. 10, 5/20/07 Min. Order.) The Court dismissed Plaintiff's petition without prejudice, with leave to reinstate on or before October 15, 2007, if CIS did not render a decision by September 28, 2007. (*Id.*) Defendants did not comply with this Court's order to adjudicate Plaintiff's naturalization application by September 28, 2007. Accordingly, on October 5, 2007, Plaintiff filed a motion to reinstate his petition for a hearing. (R. 12, Pl.'s Mot. to Reinstate at 4.)

Between October 5, 2007, and February 2008, this Court entered and continued Plaintiff's motion to reinstate five times based on the parties' representations that they were working toward adjudication of Plaintiff's naturalization application. (*See* R. 14, 11/5/07 Min. Order; R. 15, 11/20/07 Min. Order; 1/2/08 Min. Order; 1/10/08 Min. Order; 1/30/08 Min. Order.) By February 2008, CIS adjudicated Plaintiff's application for naturalization, and Plaintiff became a citizen on February 7, 2008.

Subsequently, on March 19, 2008, Plaintiff filed an application for Attorneys' Fees and Costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2421(d), for time reasonably expended and expenses incurred while pursuing his petition for a hearing on his naturalization application. (R. 21, Application for Atty's Fees.) On April 8, 2008, Defendants filed a motion to dismiss Plaintiff's original petition for a hearing under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) for insufficient process and insufficient service of process, respectively. (R. 22, Defs.' Mot. to Dismiss and Resp.) Defendants filed their response to

Plaintiff's application for fees jointly with their motion to dismiss. (*Id.*) This was Defendants' first responsive pleading in this action.

## ANALYSIS

Plaintiff filed his petition for a hearing on his naturalization application pursuant to 8 U.S.C. § 1447(b), which states that if CIS fails to make a determination on the application within 120 days of the applicant's naturalization examination, the applicant may apply to the United States district court for a hearing to adjudicate the matter or to remand the matter with instructions for CIS to adjudicate the matter. 8 U.S.C. § 1447(b). Here, almost four years elapsed between Plaintiff's naturalization interview on April 12, 2004, and the adjudication of his naturalization application in February 2008. (R. 1, Pet. for Hearing at 3.)

### I. Defendants' Motion to Dismiss Plaintiff's Original Petition for a Hearing

Defendants' motion to dismiss Plaintiff's original petition for a hearing on his naturalization application comes 15 months after Plaintiff filed the petition, and 2 months after CIS adjudicated Plaintiff's application for naturalization. (R. 22, Defs.' Mot. to Dismiss and Resp.) Defendants argue that Plaintiff's original petition should be dismissed because Plaintiff never effectuated service on them. (*Id.*)

Defendants are correct that Plaintiff did not effectuate service on them. Federal Rule of Civil Procedure 4(i) requires that service on the United States be accomplished via hand delivery of a summons and copy of the complaint to the U.S. Attorneys' Office or delivery by registered or certified mail to the civil process clerk at the U.S. Attorneys' office. In addition, the plaintiff must deliver a summons and copy of the complaint via registered or certified mail to the Attorney General of the United States and the agency. Fed. R. Civ. P. 4(i). Plaintiff did not follow these

3

procedures. Plaintiff argues, however, that Defendants waived their argument because they appeared through counsel at numerous status hearings, but never filed a motion to dismiss for failure to serve. (R. 27, Pl.'s Resp. to Defs.' Mot. to Dismiss at 1-3.)

Defenses, such as inadequate service of process, should be promptly asserted to eliminate harmful delay and waste of judicial resources. *Trustees of Cent. Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 734 (7th Cir. 1991). "A party may waive a defense of insufficiency of process by failing to assert it seasonably in a motion or their first responsive pleading. That defense . . . may be waived by formal submission in a cause, or by submission through conduct. A party need not actually file an answer or motion before waiver is found." *Id.* at 732-33 (internal citations and quotations omitted). "To permit any other outcome would encourage indefinite compliance with post-judgment collection attempts while one party retains the option of asserting the defense at his leisure, to the detriment of both the plaintiff and the courts." *Id.* at 734.

Defendants filed their first pleading in this action on April 8, 2008, when they filed their motion to dismiss. (R. 22.) Although Defendants notified this Court orally at the May 30, 2007, status hearing that they were never properly served in this matter, by continuing to participate in this case and failing to raise a motion contesting service until long after Plaintiff filed his petition—and after Plaintiff's original petition was mooted by the adjudication of his naturalization application—Defendants have in essence waived, or forfeited, their right to claim insufficient service of process. Other courts in this district have come to similar conclusions. *See, e.g., Schmude v. Sheahan*, 214 F.R.D. 487, 493-94 (N.D. Ill. 2003) (holding that defendants waived defense of insufficient service of process because it was never formally raised and the

4

court was not required to consider undeveloped or unsupported claims which were not brought pursuant to an identified rule of federal civil procedure); *O'Brien v. Sage Group, Inc.*, 141 F.R.D. 81, 85 (N.D. Ill. 1992) (holding that defendant waived defense of insufficient service of process because "[w]ith full knowledge that it was being sued in this case, [it] sat back and did nothing even though it had at its disposal the means to resolve all doubts about service by making an appropriate motion").

## II. Attorneys' Fees and Costs under the EAJA

The remaining issue, then, is whether Plaintiff is entitled to attorneys' fees and costs under EAJA. Private litigants in immigration cases are eligible for attorneys' fees under the EAJA if they can establish the statutory grounds for an award. *Floroiu v. Gonzales*, 498 F.3d 746, 748 (7th Cir. 2007). To prevail on a motion for fees under the EAJA, a party must show that: (1) he was a prevailing party; (2) the Government's position was not substantially justified; (3) there existed no special circumstances that would make an award unjust; and (4) he filed a timely and complete application for fees. 28 U.S.C. § 2412(d)(1)(A)-(B). Defendants argue that Plaintiff's petition for fees fails on each of these grounds.

### A. Timeliness of Application for Fees

First, Defendants contend that Plaintiff's application for fees was untimely. An EAJA fee petition must be filed "within 30 days of final judgment." 28 U.S.C § 2412(d)(1)(B). "A 'final judgment' means a judgment that is final and not appealable, and includes an order of settlement." 28 U.S.C § 2412(d)(2)(G). The petition for fees thus must be filed within 30 days after the expiration of the 60-day period allowed for an appeal from the final judgment in the action. *Richmond v. Chater*, 94 F.3d 263, 266 (7th Cir. 1996) (citing 28 U.S.C. §§

2412(d)(1)(B), (2)(G); *Shalala v. Schaefer*, 509 U.S. 292, 302(1993)). In general, the term "'final judgment refers to judgments entered by a court of law, and does not encompass decisions rendered by an administrative agency.'" *Schaefer*, 509 U.S. at 296 (quoting *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991)).

The question here is which order, if any, constituted a "final judgment," starting the EAJA's 30-day clock. The government argues that the Court's remand order of May 30, 2007, constituted a final judgment, and that Plaintiff's motion for fees, filed on March 19, 2008, is thus untimely. Although the Supreme Court and the Seventh Circuit have not addressed this specific issue in the context of a district court's review of an immigration case, the Seventh Circuit has indicated that courts should treat an EAJA application for fees after remand of an immigration case the same way courts treat the application for fees after a sentence-four remand in the Social Security context. In *Muhur v. Ashcroft*, the Seventh Circuit stated that it did not see "any difference" between that case, where the plaintiff applied for EAJA fees after succeeding in having her case remanded for reconsideration of her asylum application, and the situation in *Shalala v. Schaefer*, 509 U.S. 292 (1993), where the Supreme Court considered the plaintiff's EAJA application for fees in a sentence-four Social Security case remand. *Muhur v. Ashcroft*, 382 F.3d 653, 655 (7th Cir. 2004); *see also Johnson v. Gonzales*, 416 F.3d 205, 209 (3d Cir. 2005) (agreeing with Seventh Circuit that a remand in an immigration case is essentially the same as a "sentence-four" remand in a Social Security case); *Rueda-Menicucci v. INS*, 132 F.3d 493, 495 (9th Cir. 1997) (concluding that the appellant could be considered a prevailing party based on the court's remand to the Board of Immigration Appeals). Neither party has given the Court any reason to treat the remand in this case differently.

In *Schaefer*, the Supreme Court reviewed an EAJA application for fees filed after the district court remanded a Social Security case pursuant to sentence-four of 42 U.S.C. § 405(g). *Schaefer*, 509 U.S. at 297-98. Sentence-four provides the district court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Supreme Court ruled that remand pursuant to sentence-four constitutes a final judgment under the EAJA, as it "terminat[es] the litigation with victory for the plaintiff." *Schaefer*, 509 U.S. at 298, 301. Thus, the Court held that the 30-day time period for filing an application for EAJA fees after a sentence-four remand begins immediately upon expiration of the time for appeal of the remand. *Id.* at 297-98.

In *Schaefer*, however, the district court did not enter a "separate document" of judgment in connection with its remand order. *Id.* at 302-03. For the time for appeal to run, a judgment must be entered in compliance with Federal Rule of Civil Procedure 58. *Id.* at 302. Rule 58 requires that the district court set forth every judgment "on a separate document." *Id.* at 302-03 (citing Fed. R. Civ. P. 58). Therefore, although the sentence-four remand constituted a final judgment under the EAJA, the Supreme Court held that absent a formal, Rule 58 judgment, the remand order remained appealable when the plaintiff filed his application for EAJA fees 15 months later, and thus the application was timely. *Id.* at 303.

The present case raises the same issue as in *Schaefer*. When the Court remanded the case to CIS to render a final decision on Plaintiff's naturalization application, the Court did not enter a "separate document" formalizing final judgment pursuant to Rule 58. (R. 10, 5/30/07 Min. Order.) As in *Schaefer*, although the Court's May 30, 2007, remand order was final for purposes

of the EAJA, Plaintiff "is in luck" because a separate Rule 58 document was not entered, preventing the remand order from becoming "not appealable," as required to trigger the time limitations of the EAJA. *Kolman v. Shalala*, 39 F.3d 173, 176-77 (7th Cir. 1994); *see also O'Connor v. Shalala*, 23 F.3d 1232, 1235 (7th Cir. 1994); *Raines v. Shalala*, 44 F.3d 1355, 1363 (7th Cir. 1995). Therefore, although Plaintiff filed his EAJA application for fees 10 months after the remand order, the time for filing has not run out, and Plaintiff's EAJA application for fees is timely.

### B. Prevailing Party Status

Defendants also dispute that Plaintiff was a "prevailing party" under the EAJA. Prevailing party status is obtained "if the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit sought in bringing suit." *Schaefer*, 509 U.S. at 302 (internal citations and quotations omitted). A "prevailing party" must have achieved a "judicially sanctioned change in the legal relationship of the parties," not merely a voluntary change in the defendant's conduct. *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).

The *Schaefer* Court held that a sentence-four remand "terminates the litigation with victory for the plaintiff, thus conferring prevailing party status merely by virtue of the remand." *Curtis v. Shalala*, 12 F.3d 97, 99 (7th Cir. 1993) (citing *Schaefer*, 509 U.S. at 302). The Seventh Circuit extended *Schaefer*'s reasoning to the immigration context, recently holding that a plaintiff was a prevailing party even though all she achieved was a remand to the immigration service for reconsideration of her asylum application, not an order that she be granted asylum. *Muhur*, 382 F.3d at 654.

8

Although the May 30, 2007, order gave Plaintiff leave to reinstate the case if Defendants did not comply with the Court's remand order, at that point, once the Court found that Defendants violated Section 1447, "nothing remain[ed] to be done by the court." *Muhur*, 382 F.3d at 654. The parties' legal relationship changed from this Court's mandate to the agency to expedite processing of Plaintiff's application. The fact that Defendants were never required to file a written response to Plaintiff's original petition does not change this analysis because the violation of Section 1447 was clear on its face.

The present case is similar to a recent case before the First Circuit. In *Aronov v. Chertoff*, the First Circuit held that the plaintiff was a "prevailing party" within the meaning of the EAJA where the plaintiff filed a motion in the district court under Section 1447(b) because more than two and a half years had passed between his citizenship exam and the filing of his action. *Aronov v. Chertoff*, 536 F.3d 30, 2008 WL 2941569 (1st Cir. Aug. 1, 2008). In *Aronov*, pending the issuance of the remand order, the defendants had completed review of the plaintiff's application for naturalization, and the district court's remand order included the defendant's representation that the plaintiff would be naturalized by a date certain. *Id.* at *2. The First Circuit held that the district court's remand order was "indispensable to the naturalization outcome," and "ended the dispute by providing [the plaintiff] his sought-after relief." *Id.* at *7. The *Aronov* Court reasoned that once the plaintiff filed suit in the district court, the court, not CIS, had jurisdiction to adjudicate the plaintiff's naturalization application; thus, the district court reasonably concluded that it was ultimately the remand order, not the agency's voluntary concession, that brought about the material change in the parties' relationship and "place[d] the weight of judicial authority" onto the parties' change in legal relationship, qualifying the plaintiff

as a prevailing party. *Id.* at *7-8.

Most district court cases addressing the issue agree that a plaintiff is a prevailing party after achieving a remand order from the district court in response to a Section 1447(b) petition. *See Ghanim v. Mukasey*, 545 F. Supp. 2d 1146, 1150 (W.D. Wash. 2008) (holding that the plaintiff was a prevailing party where CIS did not voluntarily naturalize the plaintiff but was compelled to do so by court's order remanding case to CIS with explicit instructions to adjudicate the application by a date certain); *Aboushaban v. Mueller*, 475 F. Supp. 2d 943, 946 (N.D. Cal. 2007) (holding that plaintiff who obtained court order requiring CIS to adjudicate the plaintiff's application was prevailing party); *Alghamdi v. Ridge*, No. 3:05cv344-RS, 2006 WL 5670940 (N.D. Fla. Sept. 25, 2006) (holding that defendants' actions in processing naturalization application not due to their own voluntary change but to "judicial imprimatur" from order on remand); *Aarda v. U.S. Citizenship and Immigration Servs.*, Civ. No. 06-1561, 2008 WL 974916, at *5 (D. Minn. Apr. 8, 2008) (holding that by virtue of the court's remand of the application to CIS with instructions to adjudicate it within 120 days, Plaintiff was the prevailing party in the action).[1] The Court agrees with the reasoning of these cases and finds that Plaintiff is a prevailing party under the EAJA.

C. **Substantially Justified**

Next, the government bears the burden of establishing that its position was "substantially

---

[1] Cases finding that the plaintiff was not a prevailing party and denying EAJA fees are distinguishable. *See Chebli v. Chertoff*, 07-CV-10750, 2008 WL 302317, at *3 (E.D. Mich. Feb 4, 2008) (holding that plaintiff was not a prevailing party in Section 1447(b) case where parties privately settled matter before Court held naturalization hearing); *Al Amri v. Mukasey*, No. C07-590MJP, 2008 WL 687439, at *1-2 (W.D. Wash. Mar. 11, 2008) (holding that plaintiff was not a prevailing party where defendants adjudicated plaintiff's application after the court denied motion to remand to hold its own evidentiary hearing).

10

justified," such that Plaintiff, as the prevailing party, is not entitled to attorneys' fees. *Floroiu*, 498 F.3d at 748. A position that is substantially justified is one that is "justified in substance or in the main or justified to a degree that could satisfy a reasonable person." *Id.* (internal citations and quotations omitted). In other words, the government's position must have a reasonable basis in law and fact, and there must exist a reasonable connection between the facts and the government's legal theory. *Cunningham v. Barnhart*, 440 F.3d 862, 863-64 (7th Cir. 2006). A court may award attorney fees on the basis of the agency's prelitigation conduct, which gave rise to litigation in the district court, or the agency's litigation position, but the district court is to make only one determination for the entire civil action. *Id.*; *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006).

Defendants argue that whether their position was substantially justified "cannot be decided here," because "[t]here is simply no record here of the defendants' position" because they were never properly served and thus were not required to assert a position. (R. 23, Defs.' Mem. in Supp. of Mot. to Dismiss and Resp. at 7.) Contrary to Defendants' arguments, there is ample record of their position in this case. First, Defendants asserted a "pre-litigation" position when the agency failed to timely adjudicate Plaintiff's naturalization application. *See, e.g., Aronov*, 2008 WL 2941569 (agency's failure to timely adjudicate the plaintiff's naturalization application constituted pre-litigation position). Second, by failing to timely abide by the Court's order to adjudicate Plaintiff's application, Defendants arguably asserted a litigation position that the long delay in processing the application was proper. Third, Defendants are currently asserting a litigation position, advocating dismissal of Plaintiff's original petition for a hearing.

Moreover, it is the government's burden, not Plaintiff's burden, to establish that its

11

position was "substantially justified." *Floroiu*, 498 F.3d at 748. Defendants state that "were [they] required to assert a position" to show their position was substantially justified, they would contend that CIS's delay in adjudicating Plaintiff's naturalization application was substantially justified because Congress requires the FBI to conduct a background check before CIS can adjudicate a naturalization application, and the FBI had not completed the background check. (R. 23, Defs.' Mem. in Supp. of Mot. to Dismiss and Resp. at 9-10.)

Defendants' purported justification for their delay in processing Plaintiff's application, however, is not a substantial justification for Defendants' pre-litigation and litigation position. This Court agrees with the only appellate court to have addressed this exact issue: general justifications for the delay, including the agency's policy of requiring name checks for security purposes and the significant backlog of names that the FBI is processing, do not justify the agency's disregard of the clear statutory mandate of Section 1447 that naturalization applications be processed within 120 days of the examination. *See Aronov*, 2008 WL 2941569, at *14. In *Aronov*, as in the instant case, the government argued that its delay in processing the plaintiff's application for naturalization was justified because the immigration agency had to complete a personal investigation and receive confirmation from the FBI that a full criminal background check had been completed before the agency could adjudicate an application for naturalization. *Id.* at *12-14. The First Circuit held that although "the agency has valid—indeed persuasive—reasons for requiring comprehensive FBI name checks under ordinary circumstances, that policy determination cannot justify the failure to comply with a statutory deadline." *Id.* Therefore, the First Circuit determined that the government's assertion that it was required to wait until the plaintiff's FBI name check was completed before adjudicating his

12

naturalization application did not have "a reasonable basis in law and fact" and did not substantially justify the defendants' noncompliance with the 120-day statutory requirement. *Id.*

District courts that have addressed this issue have come out the same way. One court stated the matter particularly aptly: "[A] reasonable person would require a satisfactory justification for a substantial delay in completing the background check. . . . Here, Defendants offer no justification for the delay; rather, they merely state that 'background checks were necessary and had to be completed before the plaintiff could be naturalized.' This explanation merely restates, in a conclusory manner, the necessity of completing the background check; it does not justify the delay." *Alghamdi*, 2006 WL 5670940, at *14. Moreover, if the government's burden to show substantial justification could be satisfied "by a general appeal to delays attributable to the FBI background check process," the 120-day statutory window mandated in 8 U.S.C. § 1447(b) "would be of no effect." *Berishev v. Chertoff*, 486 F. Supp. 2d 202, 207 (D. Mass. 2007); *see also Ghanim*, 545 F. Supp. 2d at 1151 (holding that CIS's delay in processing the plaintiff's naturalization application was not substantially justified where defendants argued that they could not adjudicate the application until the name check was complete, but they failed to explain why the name check was delayed); *Phompanya*, 2008 WL 538981, at *5 (holding that CIS's delay in processing the plaintiff's naturalization application was not substantially justified by "insufficient resources to do the job that Congress has charged the agency with doing"); *Aarda*, 2008 WL 974916, at *5 (holding that defendants' contention that government was extremely backlogged with name-check requests necessary to complete the background check for the naturalization applications did not substantially justify delay in processing applications).

Finally, there are no special circumstances in this case—beyond the issues already addressed above—that would make an award of attorneys' fees unjust. *See Floroiu*, 498 F.3d at 748.

### III. Attorneys' Fees Calculation

In the application for fees and costs, Plaintiff requests a total of $9,652.95 in attorneys' fees, constituting a rate of $285 per hour, far in excess of the statutory maximum award. (R. 21, Application for Atty's Fees at 8-9.) The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Attorneys with specialized immigration experience may be entitled, in certain cases, to an award in excess of the statutory maximum; however, "[i]mmigration lawyers are not *ipso facto* entitled to fees above the statutory ceiling." *Muhur*, 382 F.3d at 656. "Such an award may be appropriate when a petitioner demonstrates that his attorney brought relevant expertise to a case, such as knowledge of foreign cultures or of particular, esoteric nooks and crannies of immigration law, in which such expertise is needed to give the alien a fair shot at prevailing." *Floroiu*, 498 F.3d at 749 (citing *Muhur*, 382 F.3d at 655).

Defendants argue that Plaintiff's attorneys are not entitled to fees in excess of the statutory maximum because they did not use any "specialized knowledge and skill" in litigating this case, and the number of hours they billed were excessive. (R. 23, Defs.' Mem. in Supp. of Mot. to Dismiss and Resp. at 11-12.) This Court agrees, in part. Plaintiff's attorneys' brief statement that "[t]his case required specialized knowledge of immigration law," combined with

14

an affidavit from both attorneys attesting to their years of experience in immigration law, is insufficient to exceed the statutory ceiling. (*See* R. 21, Application for Atty's Fees at 8-9; *id.*, Ex. G, Affs.) A request for additional attorneys' fees will not succeed if it "is unaccompanied by sufficient information regarding the particular qualifications of the attorney involved, the manner in which those qualifications were brought to bear on this litigation or information regarding the availability of attorneys with qualifications that would permit them to pursue adequately this case." *Floroiu*, 498 F.3d at 749. As in *Floroiu*, counsel in this case provide only a "blanket statement of the difficulty of the issues presented and the[ir] years of experience." *Id.* Moreover, in *Floroiu*, the plaintiff's attorney had 20 years experience, while in this case, Plaintiff's two attorneys have a combined total of only 11 years experience.[2] (R. 21, Application for Atty's Fees at 8-9; *id.*, Ex. G, Affs.) Accordingly, the Court finds that Plaintiff's attorneys are entitled to no more than the statutory maximum of $125 per hour.[3] Contrary to Defendants arguments, the Court does not find the number of hours billed to be excessive, given the number of hearings held and briefs filed in this Court. Thus, Plaintiff's application for attorneys' fees is granted at the rate of $125 per hour.

---

[2] In Plaintiff's response to Defendants' motion to dismiss, Plaintiff adds that his case "required a detailed analysis of the immigration consequences of criminal activity, necessitating a comprehensive review of both applicable criminal statutes and the Immigration & Nationality Act, and implementing regulations." (R. 27, Pl.'s Resp. to Defs.' Mot. to Dismiss at 10.) Researching two statutes, however, does not represent any particular expertise or "knowledge of foreign cultures or of particular, esoteric nooks and crannies of immigration law" warranting an increase in attorneys' fees. *Floroiu*, 498 F.3d at 749

[3] Plaintiff's attempt to account for cost of living adjustments to the $125 rate—a U.S. Department of Labor spreadsheet pulled from the Department of Labor website—falls short of establishing what the cost of living adjustment to the $125 should be, especially in light of the fact that the Seventh Circuit found the $125 rate adequate in *Floroiu*, a case only one year old. *See Floroiu*, 498 F.3d at 749-50.

Plaintiff's counsel also seek $350 in costs. (R. 21, Application for Atty's Fees at 8-9; *id.*, Ex. G, Affs.) Although the government does not contest this figure, Plaintiff does not provide a bill of costs in support. Rather, this figure is mentioned only in the last line of Plaintiff's attorneys' affidavits, as a summary request, with no explanation. (*See id.*) This unsupported request for costs does not satisfy the showing needed for a judgment of costs under the EAJA, 28 U.S.C. § 2412(a)(1). Accordingly, the Court denies Plaintiff's application for costs.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's petition for a hearing on his naturalization application is denied (R. 22), and Plaintiff's motion to reinstate his petition for a hearing is denied as moot because CIS already adjudicated his application. (R. 12.)

Further, the Court grants Plaintiff's application for attorneys' fees, but orders the amount to be recalculated at the $125 per hour statutory rate. (R. 21, Application for Atty's Fees.) The Court denies Plaintiff's application for costs. (*Id.*)

Date: September 12, 2008  ENTERED:

Ruben Castillo
**United States District Judge**